## J. J. Newberry Co. v. Judd.

(Decided April 30, 1935.)

310

WOODWARD, HAMILTON & HOBSON and WILBUR FIELDS for appellant.

GEORGE J. MAYER and CHARLES G. KIPP for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is from a judgment for $1,750 for false imprisonment.

The appellee, Mrs. Mentha Judd, about twenty years old, always lived at Grey Hawk, Jackson county. On October 6, 1933, she started on a visit to her sister at Brandenburg, and on the way made the acquaintance of Mrs. Pearl Hoskins, of Owensboro. The bus reached Louisville about noon, and while waiting for a bus to continue their journey they visited the store of the appellant, J. J. Newberry Company. Mrs. Hoskins went to the lunch counter and Mrs. Judd tried on some gloves. She walked around the store, and returned to the glove counter. The young woman's actions excited the suspicion of Russell, an assistant manager of the company, and he and two clerks watched her. Finally, she picked up a pair of gloves and took them over a few feet to the next counter, where Mrs. Hoskins was eating, and asked if she thought they were worth 79 cents. Mrs. Hoskins thought the gloves a little heavy, but Mrs. Judd said she was going to buy them anyhow. She testified that thereupon she turned and was walking over to the glove counter with the gloves in her hand and opened her purse. While in the act of opening a compartment in it for the purpose of getting her money and paying for the gloves, Russell grabbed her by the arm, took the gloves and said: "You were going to steal these gloves; come and go with me." He picked up her suitcase and, taking her by the arm, led her across the store. He released her arm and demanded that she follow him into the basement. There Russell renewed his accusation and searched her baggage. She had only a dollar and offered to pay him the 79 cents, which she was insisting was the price, but Russell declined to take the money and thereupon called the police. Mrs. Hoskins corroborates the plaintiff in all these things, except she

did not see or hear the arrest and conversation before they reached the steps to the basement.

Russell's testimony up to this point is as to his suspicions being aroused and that Mrs. Judd picked up the gloves, looked around, turned and walked to the lunch counter and talked with the lady, returned to the glove counter, looked around and wadded up the gloves and pushed them into her partly opened purse, and then reached down to pick up her baggage from the floor. He approached and asked if she wanted to pay for the gloves and she stood and said nothing. At another place in his testimony Russell stated that he asked if she meant to steal the gloves, and she responded that she had not and wanted to pay for them. He denied having put his hand on her, but admits opening the purse and taking out the gloves. By that time people had begun to gather around, and he invited her to go with him and "talk it over." He testified she voluntarily followed him to the basement. According to Russell, he did not search the baggage, but it came open and he pushed some garment back into it and closed it. He further testified that the gloves were worth $1.39 and for that reason he had refused to accept the dollar tendered by Mrs. Judd. The two women denied that Russell said anything about the gloves being worth $1.39.

The testimony of the police is that Russell told them that he had a shoplifter who had got a pair of gloves and whom he wanted taken in charge. They advised he would have to go along and take out a warrant. Mrs. Judd was taken to the police station in the patrol wagon. Mrs. Hoskins went along to help the young lady, as she says. Russell was directed to the clerk's office for the purpose of having a warrant issued, while the prisoner was detained in the lobby of the station, but among the officers. From time to time Mrs. Hoskins had insisted with Russell that he should let the young woman go. It appears that finally Russell became doubtful of the propriety of his action and asked the advice of the police officers, who advised that if the young woman was guilty he ought to take out a warrant to protect himself and his company, and if she was not guilty he should not have "sent her in to start with." The plaintiff was interrogated by the police and denied having done any wrong. She persistently refused Rus-

sell's request that she sign a statement admitting guilt. Russell got into communication with the manager of the company's store, and upon his advice, as a matter of mercy, they testify, he declined to take out the warrant and she was discharged. On cross-examination it was drawn out that the manager told him to get a statement from the young woman admitting guilt, and then to let her go. This was some time between 5 and 6 o'clock in the afternoon, her experience having covered a period of four or five hours.

Russell put Mrs. Judd in an automobile and took her to the bus and railroad stations and learned that there was no later bus or train to Brandenburg. He and his wife took her to their home, where she ate sparingly of supper to which she was invited, and Russell later in the evening sent her to Brandenburg in an automobile, where she arrived about 10 o'clock at night. But Mrs. Judd upon request gave up her dollar to pay for her transportation. At Russell's home she signed a statement written by him. Produced at the trial it read:

"I admit that I took the gloves and after I am released I will not bring any trouble of any kind, for it was my first time in a city store and I did not understand the way of buying. I was given a way of transportation and was fed while here at Mr. Russell's home and treated nice."

Mrs. Judd insists, however, that only the last sentence on this paper was there when she signed it, the charge being that Russell had superimposed the first part of it. And the jury so found, as the issue was submitted as being a complete defense, although it does not seem to us to be an admission of a theft.

During these distressing events the young lady, who was in a city for the first time, with no friend but her newly found one, naturally was shocked and made nervous. She cried and bordered on hysteria. She had expected to return from her visit within a day or so, but her nervous condition and a cold and tonsilitis which she contracted kept her at the home of her sister for two weeks. She lost about ten pounds in weight. Thereafter she went under the care of a local doctor in Jackson county, who expressed the opinion that her condi-

tion was caused by her grievous experience. The jury specified its verdict to be for compensatory damages only.

The jury chose to accept the plaintiff's version of this occurrence and thereby found that the act of Russell was without justification. The verdict, however, was against the company only, although Russell was a joint defendant. While there was no actual imprisonment in the common understanding of the term, there was an arrest and detention, and the case made out by plaintiff is embraced in the tort designated as "false imprisonment," which in law is the intentional restraint or willful detention or interference with one's liberty or freedom, contrary to his will and without authority of law. 25 C. J. 443; 11 R. C. L. 793; Reynolds v. Price, 56 S. W. 502, 22 Ky. Law Rep. 5; Miller v. Ashcraft, 98 Ky. 314, 32 S. W. 1085, 17 Ky. Law Rep. 894; Great Atlantic & Pacific Tea Co. v. Billups, 253 Ky. 126, 89 S. W. (2d) 5; Annotations 31 A. L. R. 314.

The appellant does not undertake here to justify the act of its employee, but insists that, having gone beyond his authority and having violated its express directions relative to such conditions when they should arise, it cannot be held responsible. We have been furnished with an interesting and instructive discussion of the general principles pertaining to the liability of a master for a tort committed by his servant, along with authorities covering cases of this character and related ones. We deem it unnecessary, however, to deal with those principles as developed and enunciated in the mass of the law, with their distinctions and ramifications, for it seems sufficient to look only to the specific principles and their application to torts of this particular class.

At one time it was supposed that a corporation could not be held responsible for torts involving the element of evil intent, or wrongs of this class, upon the idea that the state in granting its charter could not and did not confer the power to commit unlawful acts; that if such torts were committed by corporate agents, they were ultra vires and but the individual wrongs of the agents themselves. But that idea is obsolete and no longer obtains. The corporation is liable for compensation for a tort "committed by an agent in the course

of his employment, although it is done wantonly and recklessly or against the express orders of his principal.'' Cooley on Torts, sec. 70; Baltimore & Potomac R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 S. Ct. 719, 27 L. Ed. 739; Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, 13 S. Ct. 261, 37 L. Ed. 97. Accordingly, it is now well settled that the rule of liability embraces not only the negligence and omissions of a corporation's officers and agents, but also all tortuous acts authorized by it or done in pursuance of any general, special, or implied authority to act in its behalf on the subject to which they relate or which the corporation has subsequently ratified. False imprisonment is recognized as within the class of forcible wrongs for which an action for damages may be sustained against a corporation. Cooley on Torts, sec. 70; Louisville & N. R. Co. v. Owens, 164 Ky. 557, 175 S. W. 1039; W. T. Grant Co. v. Taylor, 223 Ky. 812, 4 S. W. (2d) 741; Ward v. Kentucky River Coal Corp., 240 Ky. 423, 42 S. W. (2d) 530.

Appellant, of course, does not question these familiar conceptions of the law. However, it relies strongly upon Mali v. Lord, 39 N. Y. 381, 100 Am. Dec. 448 (decided in 1868), where the facts were quite similar to those here present, and in which a corporation was held not liable for the act of its superintendent in having a woman arrested upon suspicion of being a shoplifter. That decision seems to have been rested upon the idea that the corporation could not be presumed to have conferred, as by implication, authority upon its agent to commit such a wrong which it had no power itself to commit, and consequently that merely intrusting him with the authority to do all acts necessary and proper for the protection and preservation of its property was not sufficient to hold the corporation responsible. But limitations have been put upon the opinion by the court which delivered it and it has been criticized by many other courts. Annotations, 35 A. L. R. 655. It is certainly contrary to the law as recognized in this jurisdiction, as are some other cases of like reasoning cited in brief.

Lack of justification of an act of the agent being established, and express authority being unproved, difficulty arises in cases of this character in determining whether or not the erroneous or wrongful act in the

particular instance should be construed as within the scope of service, actual or apparent, thereby carrying the imputation of wrong to the employer.

It is clear the rule of respondeat superior cannot be invoked and the employer be held liable where the action of the employee was motivated by conceptions of personal wrong or the invasion of his private rights. And though there is some conflict of opinion, the trend of the decisions is to exonerate the principal where the act was not for the protection of his property or interests, but was to vindicate public justice or to redress an offense against society, or to punish an offender for something already done, although the wrongful act had its origin in some agency relation. 25 C. J. 502; 18 R. C. L. 812; Annotations 35 A. L. R. 654; Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394; Cincinnati, N. O. & T. P. R. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200; John v. Lococo, 256 Ky. 607, 76 S. W. (2d) 897; Carter v. Howe Machine Co., 51 Md. 290, 34 Am. Rep. 311; Patterson v. Maysville & Big Sandy Ry. Co., 78 S. W. 870, 25 Ky. Law Rep. 1750; Markley v. Snow, 207 Pa. 447, 56 A. 999, 64 L. R. A. 685.

Where the employee was intrusted with the care and custody of his employer's business and property and his act of arrest or detention or its procurement arose out of his effort and purpose to protect or recover the same or collect the charges due thereon, or where the supposed crime was at the time being perpetrated, the principal is held liable. Although he was incited by excessive zeal, or used poor judgment, or did an unexpected thing, the implication is that it was done in the exercise of a discretion and judgment as a means and for the purpose of performing his duty. This implication is imposed upon the principal if the nature of his duty and other circumstances make it a reasonable conclusion that it was within the scope of authority and in furtherance of the principal's business and interest on the occasion. It is a sound legal concept that a merchant or other principal who commits to an employee or agent the management of his business and care of his property is justly held responsible when the agent, through lack of good judgment or proper discretion, or infirmity of temper, or under the influence of passion aroused by the circumstances, goes beyond the strict

line of his duty or authority and inflicts an unjustifiable injury upon another. He cannot screen himself from liability by setting up private instructions or orders given the employee, and say that he violated the same or exceeded his authority or was guilty of willful or malicious conduct. Liberality in favor of the person falsely imprisoned or otherwise injured must be exercised in determining the scope of authority of the agent and the responsibility of the principal. Robards v. P. Bannon Sewer Pipe Co., supra; Louisville & N. R. Co. v. Offutt, 204 Ky. 51, 263 S. W. 665; Louisville & N. R. Co. v. Owens, 164 Ky. 557, 175 S. W. 1039; Ward v. Kentucky River Coal Corporation, 240 Ky. 423, 42 S. W. (2d) 530; John v. Lococo, supra; 25 C. J. 501, 502; 11 R. C. L. 810; 18 R. C. L. 712; Annotations 35 A. L. R. 645, 77 A. L. R. 927; C. N. Robinson & Co. v. Greene, 148 Ala. 434, 43 So. 797; Eichengreen v. Louisville & N. R. R., 96 Tenn. 229, 34 S. W. 219, 31 L. R. A. 702, 54 Am. St. Rep. 833; Staples v. Schmid, 18 R. I. 224, 26 A. 193, 19 L. R. A. 824.

The character of employment is an important consideration attending the inclusion or exclusion of the particular agent's misconduct as within or without his implied authority. The designation of manager or assistant manager of a store carries the implication of general power and permits the reasonable inference that he was invested with the general conduct and control of his employer's business in the store, and his acts are more surely the acts of the principal. Kelly v. Newark Shoe Stores Co., 190 N. C. 406, 130 S. E. 32; Cf. Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52. Several cases are noted in the annotations of 35 A. L. R. 690 holding that the wrongful action of a floorwalker, whose duty it was to protect his employer's goods or to watch customers and prevent them doing harm, in restraining or causing the arrest of an alleged shoplifter rendered his employer liable for damages therefor. In the case at bar, the evidence is that Russell's duties were in part to order merchandise; to "see that the floor is taken care of and customers waited on"; to direct salesladies; to annoy suspected thieves so as to cause them to desist their efforts and leave the store; "to see that they do not take anything"; and to look after the company's welfare "on the floor."

In Mosley v. J. G. McCrory Co., 101 W. Va. 480, 133 S. E. 73, the assistant manager of the company pursued a suspected shoplifter into another store for the purpose of recovering the property and there caused him to be arrested and searched, and the employer was held responsible. The distinction, however, is sometimes drawn and liability imposed only to the point where the restraint was during an effort to recover the alleged stolen goods and not beyond that point. Pruitt v. Watson, 103 W. Va. 627, 138 S. W. 331; McCrory Stores Corp. v. Satchell, 148 Md. 279, 129 A. 348. Should such distinction be recognized according to Russell's own evidence he was insisting to the termination of her arrest that the young woman pay him $1.39, so the case is within that line holding that where the agent believes property has been stolen and he can recover it or the charges due thereon he is acting within the orbit of his implied authority.

In John v. Lococo, supra, a clerk and truck driver of a fruit dealer, while chasing some boys who had pilfered oranges from a barrel, threw a "box opener" at them. It struck a little girl on the sidewalk who was in no way involved. The opinion discusses the legal principles applicable to an assault committed by an employee and draws the distinction between the grounds upon which liability and nonliability of the employer rest. Those principles are in general the same as in cases of false imprisonment; but the nature of an assault vi et armis usually makes it an unreasonable rather than a reasonable inference or implication that the wrong was done in execution of authority or as a means for accomplishing the service of his employer. Accordingly, it was held that the facts in the Lococo Case were such as not to impose liability upon the master for the rash act of the servant.

The conclusion necessarily is that the court properly overruled the demurrer to the petition and the defendant's motion for a directed verdict.

The court excluded testimony of Russell as to the company's instructions relative to such situations as were presented upon this occasion to the effect that under no circumstances should an employee or manager arrest or cause the arrest of a suspected or actual shoplifter. The general manager of the store testified with-

out objection concerning the instructions as to what he should do affirmatively, and the evidence of the duties of Russell as an assistant manager was received. As we have indicated above, a violation of orders in these matters does not acquit the employer, so the evidence was properly rejected.

The plaintiff was permitted over objections to introduce witnesses from her home who testified to her good reputation and standing there. Some of the depositions read contained extraneous matter as to the plaintiff and her family, which were irrelevant, though not prejudicial. We think evidence of good character of the plaintiff is admissible as substantive proof in cases of this class. The nature of the charge upon which the defendants sought to justify the plaintiff's arrest, as well as the humiliation and other effects of such embarrassing experience, would seem to involve the attribute of good character. 25 C. J. 544. It was so held in Louisville & N. R. Co. v. Owens, supra, where the suit was for damages for malicious prosecution, and in People's Store v. Ledford, 252 Ky. 122, 65 S. W. (2d) 1011, where slander was one of the grounds of action, which are kindred proceedings. See, also, Johnson v. Featherstone, 141 Ky. 793, 133 S. W. 753.

In the argument counsel for plaintiff stated the jury "in fixing the amount of damages should endeavor to contemplate their wife or sister or daughter being in a similar situation." As the trial court said in his opinion, the statement was improper (see Southern-Harlan Coal Co. v. Gallaier, 240 Ky. 106, 111, 41 S. W. [2d] 661), and the jury should have been so admonished; but it cannot be regarded as prejudicial upon a consideration of the whole case.

The criticism of the instructions is based upon the conception that in no event could the company be held responsible for the entire affair, especially after Russell had turned the plaintiff over to the police. The foregoing discussion would seem to show this point not to be well taken. See, also, Ross v. Kohler, 163 Ky. 583, 174 S. W. 36, L. R. A. 1915D, 621. There are some other objections to the instructions, but they seem to have properly submitted the issues.

The judgment is affirmed.