## Moore v. Ford Motor Co.

(Decided October 13, 1936.)

HUBBARD BROTHERS for appellant.

BEN F. WASHER and WALTER S. LAPP for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

A demurrer of the Ford Motor Company was sustained to the petition of the appellant, William Moore, seeking damages of that company and its employee for assault and battery. He thereupon suffered the dismissal of the petition as to the company and prosecutes an appeal. We state the substance of such portion of it as is material to the decision.

On and before September 17, 1934, the plaintiff was employed by the defendant Ford Motor Company at its assembling plant. Davis was his foreman or superintendent, and it was his duty, in the course of his em-

ployment, upon the termination of the employment of an employee working under him, to fill out or direct the filling out of a printed form prepared by the defendant, known as a "Termination of Service Record" of that employee, and also obtain a "Tool Clearance," before the employee could receive his final pay. On that day the plaintiff voluntarily terminated his employment with the company and Davis "in accordance with his duties and pursuant to his instructions from the defendant Ford Motor Company, herein set out, directed the timekeeper to fill out a 'Termination of Service Record' for the plaintiff's employment, which statements or statement as to the cause of the termination of plaintiff's employment, which statements or statement the said W. Davis instructed the plaintiff to accede to and upon plaintiff's refusal to accede the said W. Davis to accomplish his duties and to secure for the defendant, Ford Motor Company, an agreement as to the 'Termination of Service Record,' and to secure a tool clearance from the plaintiff, both of which were for the record and use of the defendant, Ford Motor Company, did then and there assault this plaintiff."

It is charged that the assault was maliciously and willfully committed by Davis "while acting within the scope or apparent scope of his authority and in the furtherance of his master's business." Davis struck the plaintiff with force and violence, and bruised him about the face and eyes with his clenched hand or blunt instrument. It was done in the presence of numerous others, and resulted in humiliation, mortification, and great physical pain and suffering, to his damage in the sum of $2,000.

Passing the serious question of material portions of the petition being but conclusions of the pleader, we go straight to the point argued by the appellant that the petition presented a justiciable claim against the employer.

In John v. Lococo, 256 Ky. 607, 76 S. W. (2d) 897, 899, the general rule of measurement of responsibility is stated to be:

"If the assault of a servant of a third person is done in the execution of the authority given him by the master and for the purpose of performing what he was directed to do, the master is responsible

whether the wrong done was occasioned by a wanton, willful purpose, or to accomplish his business in an unlawful manner, but, if the servant commits a wrongful act without authority, and not for the purpose of executing the orders or doing the work of his master, the latter is not responsible therefor."

The general principles have been fully discussed in that and other opinions, especially in Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394, and Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. (2d) 359. Reiteration is unnecessary. We may observe, however, as of close pertinence to the case at bar, that it is not sufficient merely that the wrongful act had its origin in some agency relation. Even though the assault arose out of the employment, the circumstances of the wrongful act must afford the reasonable inference that it was done in furtherance of the master's business or interest and there was an implied consent thereto, such as where the service in which the employee was engaged involved the exercise of his discretion in the particular matter.

If the servant in doing the tortious act is executing a purpose personal to himself, he has gone outside his line of duty in his master's business—he stepped out of the service. The relation is but an accidental or incidental connection. Brooks v. Gray-Von Allmen Sanitary Milk Co., 211 Ky. 462, 277 S. W. 816, 46 A. L. R. 1207.

The source of the difficulty here, as in other cases, is the element of an implied authority of the servant to use the force complained of in performing his duty. The petition in respect of the scope of authority charges no more than that it was the duty of Davis to obtain from the plaintiff an approval of or agreement as to statements on a form showing his service record, which had been filled out by the timekeeper, and, when the plaintiff refused to agree because of "certain statements" as to the cause of the termination of his employment, in order to "accomplish his duties and to secure" the agreement and a "Tool Clearance" (whatever that may be), Davis assaulted the plaintiff. In short, the foreman maliciously struck the plaintiff in order to make him agree. The allegation is that it was within the

scope of the foreman's authority to use such cave man tactics, but the facts alleged negative the conclusion.

Let us look to the precedents.

Cases of false arrest, like Newberry Co. v. Judd, supra, while close in character, are not quite in point, for the nature of an assault vi et armis makes it an unreasonable, rather than a reasonable, inference that it was committed in the execution of authority or as a means for accomplishing the service of the employer. And cases involving an assault upon patrons of common carriers, merchants, innkeepers, theaters, and the like are of another class because they had been invited to submit their personal comfort and safety to the keeping of the employer and his employees, so theirs was a special duty to protect them.

In Robards v. P. Bannon Sewer Pipe Co., supra, it was held that the employment of a watchman to guard property did not involve the authority to shoot a mere trespasser who was leaving the premises, but the elaborate facts charged in a substituted petition were held sufficient to state a cause of action.

In John v. Lococo, supra, a young girl standing on the street was struck and injured by a heavy missile thrown by an employee while he was trying to catch some boys who had taken fruit from in front of the employer's store. A directed verdict for the employer was sustained. See, also, Strader's Adm'rs v. President, etc., of Lexington Hydraulic & Mfg. Co., 146 Ky. 580, 142 S. W. 1073; Craig's Adm'x v. Kentucky Utilities Company, 183 Ky. 274, 209 S. W. 33; Keel v. Steele Coal Co., 207 Ky. 431, 269 S. W. 531.

In Hudson v. Missouri, K. & T. Railway Co., 16 Kan. 470, Trotter was the agent in charge of the company's freight station. It was alleged in the petition, to which a demurrer was sustained, that it was his duty to deliver freight and goods to proper parties entitled thereto; that, when the plaintiff Hudson asked for and demanded the delivery of certain goods which had been shipped to him and were at the station, Trotter assaulted him. Said the court, through Judge Brewer (later of the Supreme Court), in reasoning to the conclusion that the railway company could not be held liable:

"Trotter was employed to deliver freight; plaintiff came and demanded freight; Trotter replies to his demand with an assault. Was such assault in the course of Trotter's employment? Did it grow out of any services he was engaged in, or was it in the line of his duty? It seems to us it was clearly disconnected therefrom, and a mere volunteer assault. True, the employment may have given the opportunity and occasion, but it was not an act which in any fair sense the company could have been said to have employed him to do, or to have anticipated that he would do, nor an act which was the act of the company. Reverse the circumstances, and suppose that plaintiff, as the servant and in the employ of certain merchants, went to the depot of defendant in charge of the agent Trotter, to receive their freight, and while so demanding and receiving freight assaulted Trotter with a poker: would the merchants, his masters, and in whose employ he was, be responsible for that assault? Would it have been in the line or scope of his employment? Clearly not. A party goes into a store to purchase goods, and is therefore rightfully there. He makes an inquiry as to the price of an article of a clerk behind the counter, who in reply takes a weight and knocks him down with it. Can this be said to be an act which the proprietor contemplated, when he employed the clerk? That it was in the line of the clerk's employment, and that therefore the employer was responsible? But the cases are parallel. The employment in each furnishes the opportunity and the occasion; but in each the act is not one the agent was employed to perform, nor within the scope of his employment. The general allegation, that the company by its agent made the assault, signifies nothing when the actual facts and circumstances of the assault are disclosed."

In Creely v. Missouri & K. Telephone Co., 84 Kan. 19, 113 P. 386, 388, 33 L. R. A. (N. S.) 328, the local manager of a telephone company, having authority to employ and discharge the servants and to procure signatures of employees to salary vouchers, asked an operator to sign such voucher. When she declined until she could verify the amount due her, the manager violently struck her several times. She sued the company for

damages. A judgment in her favor was reversed, the court saying:

> "To assault or beat a telephone operator is not a recognized or usual way of procuring her signature to a voucher on which to draw the wages due to her."

There are other cases, more or less parallel, as where the employees were endeavoring to collect money or do other similar things for their employers and committed assault, in which cases the employers were exonerated from liability. Among them are Matsuda v. Hammond, 77 Wash. 120, 137 P. 328, 51 L. R. A. (N. S.) 920; Johanson v. Pioneer Fuel Co., 72 Minn. 405, 75 N. W. 719; 4 Am. Neg. R. 409; Sunderland v. Northern Express Co., 133 Minn. 158, 157 N. W. 1085, L. R. A. 1916E, 1151; Collette v. Rebori, 107 Mo. App. 711, 82 S. W. 552; Zucker v. Lannin Realty Co., 217 App. Div. 487, 217 N. Y. S. 65.

In the instant case, Davis was employed, according to the allegations of the petition, to obtain an agreement to a record. It would be an extreme implication that he was authorized in any degree to use physical force and violence in order to obtain the consent, whether the matter submitted was right or wrong. Paraphrasing the language in the telephone operator's case above: To assault and beat one is certainly not a recognized or usual method resorted to in order to obtain an agreement, or even to enable a foreman to complete the service record of a retiring employee. We are of the opinion, therefore, that the judgment is correct.

It is accordingly affirmed.