## Dennert et al. v. Dee.

December 3, 1948.

Wesley Bowen and Davies and Hirschfeld for appellants.

R. Howard Smith for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment for $3,000 against John Dennert, Arthur Dennert and William J. Kinsella, Sr., proprietors of a gambling establishment and saloon in Newport, more pleasingly or agreeably called the Surf Club. It is for assault and battery committed upon the appellee, Mrs. Florence Dee, now Blase, in the place in the early hours of February 20, 1943. The verdict was $2,000 for compensatory and $1,000 for punitive damages.

The plaintiff went to the club about three o'clock in the morning with a companion, her daughter and husband, and a friend, Walter Moak, who identified himself as a professional gambler presently specializing in operating handbooks. There was some drinking by the party, but the plaintiff indulged only in a few beers and spent

her time playing the slot machines. Her son-in-law left the place because he had to go to work, and this seems to have angered his wife. She and her mother, the plaintiff, engaged in some talk or argument, though not loud or boisterous. Ray Taylor, a bartender, told her to shut her mouth or he would throw her out. When she replied, ''You can't do that to me,'' he jerked her off a stool and threw her ''clean across the room.'' As she was getting up, Taylor struck her in the head and shoved her through the door, down the steps, and into the street. That was the last she knew until she ''woke up in the hospital.'' She suffered a broken leg and other painful injuries. The plaintiff's companions, in the main, support her story. None of them, they say, were drunk or disorderly. Such is the plaintiff's case.

The defendants' case is entirely different. The establishment had closed down for business about two o'clock that morning. The plaintiff and her party arrived sometime around six o'clock while the porter was cleaning up. She was very drunk, and the others in her party were in the same condition, more or less. Taylor and other witnesses testified that he came about seven o'clock but was not on duty and had not been present earlier the night before. The plaintiff was very mad with her daughter and son-in-law. She violently cursed them and others around her. Mary Welch, an employee, testified that Ray Taylor was not there at all; that the porter finally induced the party to leave; and that as the plaintiff went out the door, she fell into the street. But Taylor's testimony is that he dropped in at the bar that morning for a drink of beer and the plaintiff came in afterward. Ruth Bowen, a waitress, stated that Taylor asked the woman not to use such profanity ''that the man that owned the place was a friend of his and it didn't sound nice.'' He asked one of the men in the party ''to please take her out.'' She then cursed and attacked Taylor, saying that it was none of his business. Said he, ''She tore the whole lapel off my coat and falls backward out into the middle of the street.'' He is corroborated by Ruth Bowen. Taylor, with hurt feelings, very much resented as a slander the accusation that he would ever strike any woman.

Thus the respective accounts are as far apart as the poles. Doubtless the truth of the matter is somewhere

about the equator. The jury accepted the plaintiff's story, and we proceed upon that basis.

The major point upon which a reversal of the judgment is sought is that the defendants were entitled to a directed verdict, because the plaintiff failed to establish the relationship of principal and agent between them and Taylor, or to prove any action by an agent with any express or implied authority which would impose liability upon them.

The plaintiff's testimony, supported by her companion, McGranahan, is that three or four weeks before this occasion they had gone to the Surf Club and were introduced to John Dennert, a proprietor, and to Ray Taylor by one Warrener, an employee who had invited them there. In the course of a conversation it developed that Taylor was a prizefighter and knew Mrs. Dee's son. Warrener told them in the presence of Dennert that Taylor was the "bouncer" at the place. At the time of the assault Taylor told her that he was the boss "when the boss goes home," and that he had authority to throw her out. He was giving orders to various employees, running the dice table, and going behind the bar and through a door reserved for employees. Here, too, the plaintiff is supported by the members of her party.

On this point the evidence of the defendants is that Taylor had been employed now and then as an extra bartender, but on this particular occasion he was not employed in any capacity, and did none of the things about the place as described by the plaintiff. Both Dennert and Taylor denied they had seen the plaintiff and her companion on the occasion of their first visit, and, of course, the conversation or statements attributed to them. Taylor denied he was ever a "bouncer."

The instructions predicated the authority of the jury to find for the plaintiff upon the belief that Taylor assaulted her "while acting under the scope of his apparent or real employment." Obviously, the jury believed that he was employed for the purposes described in the evidence of the plaintiff. The question we have is whether the employers are to be held accountable for his assault upon their patron under such facts. Upon their contingent acceptance of the hypothesis of his employment on this occasion, the appellants argue that the

bartender was under no duty, expressly, impliedly, or apparently, to maintain order in the place or to eject their patron. They contend that his acts must be regarded as personal or not reasonably incident to the service which he was employed to render, or in furtherance thereof. This rule of law is stated and applied in favor of the defendants in John v. Lococo, 256 Ky. 607, 76 S. W. 2d 897; Moore v. Ford Motor Co., 265 Ky. 575, 97 S. W. 2d 400; Southeastern Greyhound Lines v. Harden's Adm'x, 281 Ky. 345, 136 S. W. 2d 42. It is sometimes difficult to determine upon which side of this line of law the given facts place a case. If it could be supposed from the nature of the employment that the employer authorized or expected his employee to do the act, then the doctrine of respondeat superior is applicable. It is laid down in Cooley on Torts, 2d Ed., sec. 627-629:

"In determining whether or not the master shall be held responsible, the motive of the servant in committing the act is important; for if he supposes he is acting in furtherance of the master's interest, under a discretionary authority which the master has conferred upon him, the case will generally have an aspect quite different from what it would present if it were manifest that malice were being indulged, irrespective of the master's interest. But the motive is not conclusive. * * * The test of the master's responsibility is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name."

In the present case the proprietors could not and did not leave the place going and taking care of itself while it was yet open to the public. In contemplation of law they were present by someone who represented them and who for the time being stood in their shoes and acted in their behalf. It may be assumed that they desired to maintain an orderly place in so far as the personal conduct of their patrons went. Therefore, they had someone on duty with the responsibility of maintaining order. And the accepted facts strongly indicate that the proprietors may have supposed, at least, that Taylor would perform that service, although they may not have expected him to be so violent. In Brink v. Kennedy, 286

Ky. 566, 151 S. W. 2d 58, a judgment for $7,500 was affirmed against the owner of a Covington night club for an assault of a patron by waiters in the presence of the owner.

The evidence of the plaintiff tended to show that Taylor was exercising authority over other employees and that he was the "bouncer," or one charged with the duty of ejecting undesirable or disorderly persons. It is quite evident that Taylor regarded this woman as one or the other. His purpose was to serve his employer rather than to resist a personal affront or attack or to satisfy a personal brutal nature; at least the jury was authorized so to regard his conduct. Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. 2d 359; Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. 2d 741.

Though the acts were "horseplay" and not of the violent character which the plaintiff in the present case proved, it has been held in at least three cases that a proprietor of a saloon is responsible for the act of his bartender in pouring alcohol into the shoes of a patron who falls asleep after his libation and then setting him afire. Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L. R. A. 733, 97 Am. St. Rep. 517; Beilke v. Carroll, 51 Wash. 395, 98 P. 1119, 22 L. R. A., N. S., 527, 130 Am. St. Rep. 1103; Lynch v. Brennan, 131 Minn. 136, 154 N. W. 795, L. R. A. 1916E, 269. The contrary was held in Peter Anderson & Co. v. Diaz, 77 Ark. 606, 92 S. W. 861, 4 L. R. A., N. S., 649, 113 Am. St. Rep. 180. The basis of liability is that of a duty not to harm a patron along with an affirmative duty to protect him from harm.

We are of the opinion that the liability of the defendants was established.

In the very beginning of the trial the defendants objected vigorously to questions of plaintiff's attorney and statements of the witnesses concerning gambling at their place. The objections with motions for the discharge of the jury continued throughout the trial. It is contended that the repetition of the questions bringing gambling into the record was very prejudicial. We cannot but observe that the continual and vexatious interjections and colloquies on the part of defendants' attorneys in regard to this matter emphasized the evil complained of

more than did the conduct of plaintiff's attorney. It does not set well with a court dealing with justice for all the people to hear men who were confessedly engaged in a lawless enterprise complain that that fact was mentioned where it is res gestae of the assault upon one of their patrons. Be that as it may, the court properly stated and admonished the jury from time to time, fully and clearly, that the jury should try the case before them, and that evidence of gambling at the place should not influence them one way or the other, particularly to penalize the defendants on that account. It may be assumed that the jury observed the admonitions.

In the course of the argument an attorney for the plaintiff referred to the presence of five Newport policemen nearby at the time of the assault and to their failure to go in there. He also alluded to the laxity of law enforcement in Newport. This is raised as a point for reversal of the judgment. The record shows no objection was made to these statements. The court sustained an objection to the statement, "These gamblers are so arrogant they make their boast that they control the court house, that they control the police." The attorney apologized and asked that the statement be withdrawn. The court admonished and the attorney asked the jury to disregard the statement. This was irrelevant and improper argument; but again we must assume that the jury obeyed the admonition.

Accepting the plaintiff's version of what occurred as true, the reasonableness of the verdict does not indicate that the misconduct of the attorneys for the plaintiff, either in their interrogation or argument, prejudiced the jury against the defendants.

The judgment is affirmed.