## CITIZENS FINANCE CO. v. WALTON
### (two cases).

Court of Appeals of Kentucky.

April 24, 1951.

J. Marshall McCann, John G. Atchison, Lexington, Glenn H. Stephens, Williamsburg, T. F. Young, Corbin, for appellant.

R. Howard Smith, Newport, L. O. Siler, Williamsburg, for appellees.

CAMMACK, Chief Justice.

This appeal is from a $500 judgment given Mae Walton for injuries received at the hands of Joe Hensley, an employee of the appellant corporation, Citizens Finance Company. Mae Walton's husband was given a $250 judgment for medical expenses and loss of consortium. The two actions were tried together and will be so considered here.

The appellees' son owed money to the Finance Company. Mrs. Walton agreed to collect money from Otis Jones, her son's debtor, and pay it to the Finance Company on her son's account. The appellant received information that Jones had made payment to Mrs. Walton, and the manager, Max Duncan, directed Joe Hensley, a collector and employee of the appellant, to call at the home of the Waltons and collect from Mrs. Walton the money she had received from Jones. When Hensley arrived at the Walton home, Mrs. Walton refused to pay over the money because, as she said, "I haven't collected it all yet, and as soon as I collect it all, I'll either bring it down to the company or I'll call Mr. Duncan." Mrs. Walton said that Hensley became belligerent. An altercation occurred in which Mrs. Walton sustained an injury to the index finger of her right hand She testified that Hensley struck her and twisted her hand, thereby causing the injury. Hensley denied this, but said that, as he turned to leave Mrs. Walton's home, she ran after him and struck at him, and that he threw up his arm to protect himself. At that time he heard her finger pop.

This appeal is prosecuted solely on the ground that the court erred in refusing to sustain the appellant's motion for a peremptory instruction. The appellant contends the record does not disclose that Hensley was acting within the scope and course of his employment, and that the use of force represented such a digression from the normal duties of a collector-employee that the employee cannot be said to have been in the service of his principal.

█ We restate the principle enunciated in J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W.2d 359, 362, and followed in Wood v. Southeastern Greyhound Lines, 302 Ky. 110, 194 S.W.2d 81. It follows: "It is clear the rule of respondeat superior cannot be invoked and the employer be held liable where the action of the employee was motivated by conceptions of personal wrong

or the invasion of his private rights. And though there is some conflict of opinion, the trend of the decisions is to exonerate the principal where the act was not for the protection of his property or interests, but was to vindicate public justice or to redress an offense against society, or to punish an offender for something already done, although the wrongful act had its origin in some agency relation."

Although the tortious act complained of had its origin in an agency relation, it does not follow that the master is therefore liable. The scope, limitation and extent of the agent's authority must be examined. It is necessary to ascertain exactly what interests of the master are being protected or furthered by the agent and also to inquire into the scope of the duty of the agent in regard to those interests.

In Moore v. Ford Motor Company, 265 Ky. 575, 97 S.W.2d 400, a foreman of the company assaulted a former employee. The foreman was directed to obtain plaintiff's signature to a form known as a "Termination of Service Record." The former employee refused to sign the form, whereupon the foreman assaulted him. The Court in its opinion said: "* * * It would be an extreme implication that he was authorized in any degree to use physical force and violence in order to obtain the consent, whether the matter submitted was right or wrong. * * * To assault and beat one is certainly not a recognized or usual method resorted to in order to obtain an agreement, or even to enable a foreman to complete the service record of a retiring employee. * * *"

We think this language is applicable here. There is no indication in this record that on this occasion, or at any other time, there was given to Hensley authority to use force in collecting accounts. The duty imposed upon Hensley to collect money did not carry with it as a reasonably contemplated act, the authority to assault Mrs. Walton.

The appellees rely upon the cases of J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W. 2d 359; Fournier v. Churchill Downs-Latonia, Inc., 292 Ky. 215, 166 S.W.2d 38; and Dennert v. Dee, 308 Ky. 687, 215 S.W. 2d 575. In the Judd case an employee of the Newberry Company accosted Mrs. Judd, on the premises of the store, being under the impression that she was stealing gloves. In the Fournier case a National Guardsman, brought in by defendant company to maintain order on Derby Day, struck the plaintiff. In the Dennert case a barkeeper forcibly ejected a patron. In all three of these cases liability was imposed upon the master. However, they are distinguishable for two reasons: (1) the plaintiffs were all invitees on business premises and as such there was a special duty to protect them; and (2) the assaulting agents were given such control of their master's premises that they were under a duty, express or implied, to protect their master's property from theft and to maintain order thereon.

In the case at bar the only duty of Hensley was to collect money, which in itself was a limited duty with the attendant circumscription on the scope of his authority.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.