Robert D. **RUSSELL**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 72–1220.

United States Court of Appeals,
Sixth Circuit.

Sept. 1, 1972.

Frank P. Doheny, Jr., for appellant; Fielden Woodward, Woodward, Hobson & Fulton, Louisville, Ky., Paul M. Lewis, Elizabethtown, Ky., on brief.

James H. Barr, Louisville, Ky., for appellee; George J. Long, U. S. Atty., on brief.

Before WEICK, EDWARDS and MILLER, Circuit Judges.

EDWARDS, Circuit Judge.

This is a federal tort claims case which was dismissed by the District Judge in the United States District Court for the Western District of Kentucky on defendant's motion for summary judgment. The facts in the case do not appear to be in dispute, but the legal conclusions flowing therefrom clearly are.

On August 10, 1967, plaintiff-appellant was a patient in the psychiatric ward at Ireland Army Hospital, Fort Knox, Kentucky. He was injured when a nurse, Mrs. Davis, with whom he was talking at the time, accidentally dropped her purse. The purse struck a metal doorstop and a pistol (a Derringer) which Mrs. Davis was carrying therein discharged, wounding appellant in the leg. At the time, Mrs. Davis was in the nurses' office in the psychiatric ward and appellant came to the office door to talk to her.

By deposition Mrs. Davis testified that she had her purse in her hand with the intention of taking it to the bathroom where she usually kept it. Mrs. Davis also acknowledged that she knew there was an army regulation against bringing weapons on the post and a Kentucky state law against carrying concealed weapons, but said that she had been carring the pistol because her duties required her to drive home a distance of 10 miles late at night. She also said that she had never had any intention of using the pistol at work. She testified that she had never been told not to carry the pistol, but that she did not know whether anyone knew she had it.

On these facts the District Judge found that Mrs. Davis' actions were outside the scope of her employment and that defendant United States of America was not liable for injury resulting from her actions.

Pointing out that Kentucky law applied in determining the scope of employment, the District Judge relied primarily upon three Kentucky cases: Marcum v. United States, 324 F.2d 787 (6th Cir. 1963); Creamer v. Kroger Grocery & Bakery Co., 260 Ky. 544, 86 S.W.2d 288 (1935), and Babb v. Crescent Amusement Co., 266 Ky. 382, 99 S.W.2d 199 (1936).

■ We agree with the District Judge, of course, that the specific language of the Tort Claims Act makes Kentucky law applicable, since it is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1970); Grogan v. United States, 341 F.2d 39, 42 (6th Cir. 1963). This, however, serves only to define where we look for a solution to the problem posed by this appeal.

The problem of applying the doctrine of respondeat superior has not been simple for text writers. See F. Harper & F. James, The Law of Torts §§ 26.6, 26.-7, 26.8 (1956); W. Prosser, Law of Torts 472–478 (3d ed. 1964). Nor has it been for the Kentucky Court of Appeals. If the three shooting cases from the 1930s [1] relied on by the District Judge or by appellee were the last word on the subject, we doubtless would be required to affirm. While neither *Creamer, Babb* or *McBee's Adm'x* (see fn 1) are directly in point factually, they do tend to demonstrate a quite restrictive view of scope of employment.

We think, however, that Kentucky has now moved toward a considerably broader interpretation of the doctrine of respondeat superior. In a case where a store clerk shot and killed a regular customer when the latter jokingly said, "Stick 'em up. This is a holdup," the Court of Appeals held he acted within the scope of his employment, even though he had been specifically instructed by the owner not to resist a holdup. The court said:

> The question of liability of the master for the assaults committed by his servant has been before this and other courts frequently. Some of our cases in which it has been held the master was not liable are: Creamer v. Kroger Grocery & Baking Co., 260 Ky. 544, 86 S.W.2d 288; Phillip's Adm'r v. Tway, 269 Ky. 583, 108 S.W.2d 525; McBee's Adm'x v. Indian Head Mining Co., 280 Ky. 82, 132 S.W.2d 515; Cincinnati, N. O. & T. P. Ry. Co. v. Rue, 142 Ky. 694, 134 S.W. 1144, 34 L.R.A.,N.S., 200; John v. Lococo, 256 Ky. 607, 76 S.W.2d 897; Moore v. Ford Motor Co., 265 Ky. 575, 97 S.W.2d 400; Wood v. Southeastern Greyhound Lines, 302 Ky. 110, 194 S.W.2d 81; Citizens Finance Co. v. Walton, Ky., 239 S.W.2d 77.

> In other cases from this jurisdiction the master has been held to be liable: J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W.2d 359; Fournier v. Churchill Downs-Latonia, Inc., 292 Ky. 215, 166 S.W.2d 38; Dennert v.

1. Creamer v. Kroger Grocery & Bakery Co., supra (1935); Babb v. Crescent Amusement Co., supra (1936); McBee's Adm'x v. Indian Head Mining Co., 280 Ky. 82, 132 S.W.2d 515 (1939).

Dee, 308 Ky. 687, 215 S.W.2d 575; Louisville & N. R. Co. v. Moore's Adm'r, 292 Ky. 223, 166 S.W.2d 68.

Neither list of citations is intended to be complete; examination of the cases cited discloses that although opposite results were reached, because of widely variant factual situations, they recognize principles of law which are substantially consistent.

In 34 A.L.R.2d 372, et seq. is found a recent annotation dealing with the law relating to "Assault by Servant." In discussing the applicable legal principles relating to mercantile establishments, it is said at page 427 of 34 A. L.R.2d:

"The rule discussed in the previous two sections to the effect that certain employees, from the nature of their duties, may cause their employers to become responsible, under the doctrine of respondeat superior, for assaults committed by them upon a customer, patron, or other invitee has been applied in certain situations to employees of mercantile establishments. The question of the master's responsibility in such cases appears to be determined by the type of work which such employees are expected to perform, and hence employees such as store detectives, and managers and other agents who exercise control over the conduct of the master's business, and who are expected to safeguard the master's property and maintain order are ordinarily held to be acting within the scope of their employment when committing an assault upon a customer, patron, or other invitee even though such assaults are to some extent personal and malicious."

■ In Prosser on Torts, 2nd Ed., pp. 354, et seq. it is observed that early cases denied recovery against the master, adhering to the fiction of an "implied command" of the master against intentional wrongdoing by his servant. However, under modern theories of allocation of the risk of the servant's misbehavior, it has been recognized, says Prosser, that even intentional torts may be so reasonably connected with the employment as to fall within the scope of it. The present tendency is to extend the employer's responsibility for such conduct. Op. cit., p. 354.

The principle is thus stated in Restatement of Agency, 2d, § 245:

"A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant."

It is noteworthy that the Reporter's Notes, Restatement of Agency, 2d, § 245, recognize the present rule of liability reflects a broader basis for liability than did the rule in the first edition. It is said in the Reporter's Notes:

"It is believed that it is now desirable to state a rule invoking a somewhat greater liability because of the cases in the intervening years." Page 289, op. cit.

Frederick v. Collins, 378 S.W.2d 617, 618–619 (Ky.1964).

In a case closer in point factually, decided in 1970, the Kentucky Court of Appeals held an employee who shot a customer by complete accident while showing him his revolver was acting within the scope of his employment. The facts as recited by the court's opinion are much closer to those with which we deal in the instant case:

Allen undertook to buy some chairs at the store of Sun TV No. 2, Inc. Joseph Schamback, a stockholder and manager of Sun TV No. 2, waited on Allen. When it was noted that the price for the chairs was not marked on them, Schamback accompanied Allen to Schamback's office to examine a price list. Schamback's briefcase was lying open on top of a file cabinet

with a revolver on top of various documents in the briefcase. Schamback picked up the revolver in order to reach the papers, but turned momentarily to show Allen the weapon. Unexplainedly the pistol fired, wounding Allen. Employers' Liability Assur. Corp. v. Home Indem. Co., 452 S. W.2d 620, 621 (Ky.1970).

As far as we can tell from this file, neither of these last two cases was called to the attention of the District Judge.

In view of this fact and recognizing the experience of the District Judge with Kentucky law, we vacate the judgment entered below and remand the case to the District Judge for reconsideration of the legal issue involved in light of Frederick v. Collins, *supra* and Employers' Liability Assur. Corp. v. Home Indem. Co., *supra*.