## THOMPSON *v.* WRIGHT.

1. When a petition is demurred to both generally and specially, and upon the plaintiff offering to amend so as to meet the special grounds of the demurrer the court refuses to allow him to do so and enters an order in effect sustaining the general demurrer, the question is presented whether or not the petition in substance sets forth a cause of action.
2. A petition alleging negligence on the part of an employee in and about a matter falling within "the regular discharge of his duties within the

scope of his employer's business," and consequent injury to the plaintiff, sets forth a cause of action against such employee's master.

Submitted November 10,—Decided December 9, 1899.

Action for damages.　Before Judge Atkinson.　City court of Brunswick.　February term, 1899.

*Max Isaac*, for plaintiff.　*D. W. Krauss*, for defendant.

LEWIS, J.　Thompson brought his suit for damages in the city court of Brunswick, against Wright, presenting substantially the following case:　Petitioner was engaged as a drayman in the transportation of freight, merchandise, and the like, from place to place in the city of Brunswick, for the purpose of which business he had a horse and dray, and in pursuit thereof frequented the wharves, docks, and depots in said city for the purpose of soliciting business.　While engaged in this business, on August 29, 1898, the defendant was at the time, and still is, the owner of the steamer "Hessie," engaged as a common carrier in running a steamboat line between the ports of Brunswick and Darien, Ga.　At the time mentioned, petitioner was at the landing-place of this steamer, and while there contracted with one Watkins for the transportation of certain hides from the dock of the steamer to Watkins' place of business in the city ; the hides at the time being aboard the steamer "Hessie."　For the purpose of facilitating the loading and discharging of the steamer's cargoes, the officers and employees would lay its gangplank from the deck of the steamer to and on the body of the wagon bringing or carrying away merchandise or other freights.　On the occasion mentioned the mate of the steamer placed the gangplank from the steamer's deck to the rear end of petitioner's dray, and kept the same in this position for the purpose of transferring the hides from aboard the steamer to the dray.　When the loading was completed, petitioner went to his seat on the wagon, and started to drive off, when suddenly, and without any warning to him, the mate of the steamer, being defendant's employee, having neglected to take in the gangplank, wrongfully and negligently caught hold of one of the rear wheels of the dray, simultaneously uttered a tremendous yell, causing petitioner's horse to become fright-

ened, from the effect of which the horse backed himself, hides, and dray overboard into the waters of the bay, carrying petitioner, who was on the dray at the time, along with him, drowning the horse, sinking the wagon, losing the hides, and physically injuring petitioner. The petition further charged that the mate was, when discharging the cargo of said steamer, in the regular discharge of his duties within the scope of his employer's business, and the duty devolved upon him to take in and otherwise attend to the keeping of said gangplank, and that petitioner was in no way connected therewith. In consequence of this negligent conduct, petitioner sues for the loss of his horse and dray, loss of time occasioned by his injuries, and damages resulting from his physical injuries; all of which were caused without any fault or negligence on his part, and were the result of the negligent conduct of the defendant's servant. To this petition a demurrer was filed, both on general and special grounds. Petitioner offered to amend to meet any special grounds of demurrer, but the court refused to allow the same, and in effect sustained the demurrer on the general grounds. To this judgment of the court plaintiff excepts.

The rule of law governing the liability of a master for the negligent acts or voluntary torts of his servant or agent is well settled, and can not be embodied in clearer language than is expressed in section 3817 of the Civil Code: "Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." It follows from this that a master is not liable for the acts of his servant which are not done within the scope of his employment. In this case the allegation of the petition is specific, that the negligent acts of the servant complained of were committed while he was in the regular discharge of his duties within the scope of his employer's business. A part of the business of the servant in this case was evidently to arrange to take care of and protect the gangplank belonging to his master, when the same was being used for the purpose of loading or unloading the vessel. It is clearly inferable from the charges in the petition, that at the time of the negligent acts of the servant which resulted in plaintiff's in-

jury, he was engaged in an effort to save the master's property. In Wood's Law of Master and Servant, § 300, it is declared: "When a servant finds himself, or the subject-matter of his labor, in such a situation that, in order to preserve his master's interests, he must do an act that will most likely result in injury to others, the master can not escape liability upon the ground that it was purposely done by the servant. If it was done in the course of the servant's employment and in furtherance thereof, the law will regard the act as having been impliedly authorized by the master." Several instances are given by that authority which show the principle is equally as applicable to the facts in this case as it is to the cases cited in the text. In 14 Am. & Eng. Enc. L. 810, the same principle is recognized in the following language: "It is also well settled that a master is ordinarily liable for injuries caused by his servant in preventing damage or loss to property of the master." In Cooley on Torts (2d ed.), *538, it is declared: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another." This text is supported by a number of adjudications cited by the author, and is directly applicable to the facts relied on by the plaintiff for a recovery in this case.

*Judgment reversed.    All the Justices concurring.*