### 21081. GREAT ATLANTIC & PACIFIC TEA CO. *v.* DOWLING *et al.*

DECIDED JULY 14, 1931.

*Bryan, Middlebrooks & Carter, Hay & Gainey,* for plaintiff in error.

*Alexander & Jones, J. E. Craigmiles,* contra.

LUKE, J. (After stating the foregoing facts.) As the principles of law involved in this case are, in the main, applicable alike to the issues raised by the demurrer and by the motion for a new trial, we will discuss these principles generally, giving due consideration to all the issues raised.

It is the office of a demurrer to deal with the sufficiency of allegations actually made, and it can demand that a petition, on pain of being dismissed, set out a cause of action and set it out with sufficient definiteness to put the defendant on notice of what material allegations he has to meet. However, a demurrer can not force a pleader to set forth his evidence or proof, or to go into unnecessarily minute details. The petition in the instant case plainly alleged that the defendant Moore was manager of the defendant company's store; that, as such, it was his business to

protect the property of the company; and that at the time he committed the alleged tortious acts he was engaged in the business of the company. See *City of Rome* v. *Justice,* 40 *Ga. App.* 196 (2, 3) (149 S. E. 88), and cit.

There is no saving grace in the contention of the defendant company that it had instructed its manager not to cause an arrest. The petition of the plaintiff clearly shows that recovery is not sought because of any lawful action taken or occasioned by the manager and codefendant of the defendant company, but, on the contrary, recovery is sought because of the alleged unlawful, cruel, and inhumane treatment of the plaintiff by said manager. However, assuming that the defendant company did give its manager instructions not to take legal steps to protect the company's property, such instructions, in the face of the implied duty of the manager to protect his master's interest, instead of relieving the company, may have caused the manager to resort to the tortious acts of which complaint is made. Being denied lawful process, and yet having the duty of protecting his master's property, he adopted his own method of doing so.

The fact that the defendant company had not instructed or authorized its servant to pursue an improper course or to commit the tort would not necessarily prevent a recovery from the defendant company. Such a holding would preclude a recovery from the master for the misfeasance or malfeasance of its servant in practically every master and servant case, because no sensible master would likely instruct his servant to do a thing in an improper way or to commit an unlawful act. As stated in *Fielder* v. *Davison,* 139 *Ga.* 509 (77 S. E. 618): "Omitting the fellow-servant doctrine, the general rule is that a master is liable for the tort of his servant, whether negligent or voluntary, if done by his command *or in the prosecution and scope of his business.* Civil Code, § 4413. The expressions, 'in the scope of his business,' or 'in the scope of his employment,' or similar words, have sometimes been given *too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort;* but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable." (Italics ours.) The true question is, was the manager of the defendant

company, at the time he committed the tort, acting in an individual capacity or as manager of the defendant company's store. The tort was committed in the store of the defendant company, by the manager of the company, in dealing with a customer of the company, to avenge a wrong done the company, because of candy stolen from the company, and to prevent further stealing from the company. There is not the slightest intimation that the manager had been wronged personally or that he had any personal grievance against the child. He was manager of the store, and this was the method he adopted of protecting the store's interest, avenging the wrong, and preventing a recurrence of the alleged theft from the store. The selection of a manager who would pursue such an improper course in a matter concerning the company's business was made by the defendant company. The manager was at the time engaged in serving his master, the defendant company. His tortious act was in the prosecution of the master's business. It was not in the prosecution of his individual business.

In *Trawick* v. *Chambliss*, 42 *Ga. App.* 333 (2) (156 S. E. 268), it was held that there was "no material variance between an averment that the defendant committed an act and evidence that the act was committed by him through his authorized servant or agent." Section 4413 of the Code provides that "Every person shall be liable for torts committed by his . . servant by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." Under this section there are numerous cases parallel in principle to the instant case, where the master was held liable for the wrongful acts of his servant even though he gave his servant no order or authority to commit the wrongful act and derived no benefit from the commission of the act. In the case of *Perry* v. *Lott*, 38 *Ga. App.* 729 (145 S. E. 479), a servant, while driving an automobile at the rate of 40 miles an hour at the intersection of two streets, struck a Ford automobile and demolished it. The place of the accident was four or five blocks from the filling station to which the owner told the servant to go. Though the owner had not commanded or authorized the servant to go to the place where the accident occurred, or to drive 40 miles an hour at the intersection of two streets, the owner was held liable for the damage occasioned by the servant's wrongful act, because the servant was attending to the business of the owner at the time

he committed the wrongful act; and in that case, as in the case now under consideration, the evidence did not show that the servant "was engaged in any work or enterprise independent of the business of the master." See also cases cited in the opinion. The case of *Hooks* v. *Sanford,* 29 *Ga. App.* 640 (116 S. E. 221), "was an action against the proprietor of a hotel for injuries alleged to have been inflicted by the manager upon the plaintiff while a guest therein. The evidence offered by the plaintiff tended to show that while the plaintiff was complaining to a clerk at the hotel's office that the charge for a meal to which the plaintiff had just been served was excessive, the manager voluntarily responded to the complaint with opprobrious words, followed by an assault and battery upon the plaintiff. *Held,* that the inference was authorized that *the difficulty which led to the alleged assault and battery arose out of and in connection with the business of the principal which the manager had authority to transact,* and therefore that the injury was committed in the prosecution and within the scope of the proprietor's business." (Italics ours.) In that case the opprobrious words and the assault and battery were not authorized by the master, but they "arose out of and in connection with the business of the principal," just as in the instant case the wrongful acts of the servant "arose out of and in connection with the business of the principal," the alleged stealing of the candy from the principal, and the consequent punishment of plaintiff therefor.

In *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176), a drunken conductor of a street-car, in a controversy with a passenger, fired a pistol and killed a woman outside the car. It was contended that this was an individual act of the conductor, unauthorized by the company, but the Supreme Court held otherwise. In the opinion in that case it was said: "Was the act of its conductor in shooting at the passenger attributable to the company, or was this the individual act of the conductor, for which the company was not responsible? 'Every person shall be liable for torts committed by his servant by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary.' . . Who was discharging this duty for the master? The petition alleges the conductor was so engaged. He was taking up fares not for

himself but for the company. In doing this he had to make change. He failed and refused to give proper change to a passenger, and, when it was asked for, assaulted the passenger with a pistol. The protection of the passenger, the collecting of fares, the giving of change, and dealing with passengers about these matters, were all in the prosecution and within the scope of his employment. But it is said that when he conducted this dealing, not properly by giving change, but improperly by shooting at the passenger, that was his individual tort, and the company was not liable. Many authorities state the liability of a master for the tort of his servant substantially as it is codified in our code. Expressions used in some reports and text-books, that a master is bound by the act of his agent or servant in the scope of his agency and in furtherance of the master's business, or when the servant is acting for the benefit of the master, do not mean that the agent's act must be beneficial to the master, or the latter is not bound. If any declare such a rule as that the master is bound by torts of the servant which benefit him, but not by any others, we can not accept it as the rule in this State. . . In *Central of Georgia Railway Co.* v. *Brown*, 113 *Ga.* 414 (38 S. E. 989, 84 Am. St. R. 250), it was held that 'A master is liable for the willful torts of his servant, committed in the course of the servant's employment, just as though the master had himself committed them. This rule applies as well where the master is a corporation as where he is a private individual. The railroad company is liable as a trespasser to a passenger for an unjustifiable assault made upon him by the conductor of the train, the conductor being engaged in the company's business and in the conduct thereof making such assault.' And again: 'Some of the courts seem at one time to have been inclined to hold that the master can not be held liable for the willful torts of his servant, because, it was said, if the servant through anger or malice committed an assault upon a person, he ceased for the time being to occupy the position of a servant, and acted independently; that, inasmuch as he was not authorized to commit an assault, he did not represent the master in that act but acted as an individual, the master therefore being not liable either in case or in trespass. This argument has long since been exploded. *The theory that one may be a servant one minute, and the very next minute, get angry, commit an assault, and in that act be not a servant, was too refined a*

*distinction.'* (Italics ours.) In *Western & Atlantic Railroad* v. *Turner, 72 Ga.* 292 [53 Am. R. 842], it was held that when a conductor maliciously assaulted one who was treating with him for passage he was acting in the prosecution and scope of the company's business, and it was liable. And see *Turner* v. *Western & Atlantic Railroad, 69, Ga.* 827. In *Peeples* v. *Brunswick & Albany Railroad Co., 60 Ga.* 282, where a declaration alleged that a conductor called a passenger out of the train of which he was in charge and beat him, it was held to set out a cause of action, and was not subject to a general demurrer. . . In *Gasway* v. *Atlanta & West Point Railroad Co., 58 Ga.* 216, the railroad company was held liable for the willful tort of a baggage master and conductor, committed upon one who was seeking to have his baggage checked. . . This court said: 'Railroad companies are responsible to passengers for the torts of the conductors and other servants of the company employed in running trains, when such torts are committed in connection with the business entrusted to such servants and spring from or grow immediately out of such business.' . . In Barwick *v.* English Joint Stock Bank, L. R. 2 Ex. 259, 266, Willes, J., . . said: 'It is true, he has not authorized the particular act, but he has put the agent in his place to do that class of acts, and he must be answerable for the manner in which his agent has conducted himself in doing the business which it was the act of the master to place him in.'" See also *Southern Railway Co.* v. *James,* 118 *Ga.* 340 (45 S. E. 303, 63 L. R. A. 257), where the railroad was held liable for the criminal act of its servant; *Columbus Railroad Co.* v. *Woolfolk,* 128 *Ga.* 631 (3) (58 S. E. 152, 10 L. R. A. (N. S.) 1136, 119 Am. St. R. 404) ; *Thompson* v. *Wright,* 109 *Ga.* 466 (2), 469 (34 S. E. 560) ; *Renfroe* v. *Fouché, 26 Ga. App.* 340 (3) (106 S. E. 303) ; *McClure Ten Cent Co.* v. *Humphries,* 33 *Ga. App.* 523 (127 S. E. 151).

Clearly the petition shows that the tortious acts of the manager "arose out of and in connection with the business of the principal," namely, the alleged stealing of the candy from the defendant company in the defendant company's store, and by no stretch of the imagination can we conclude from the pleadings that it was an individual matter on the part of the manager, who had no personal grievance whatever against the plaintiff. This being true, the question of "whether the agent was acting within the scope of his

employment when he committed a tortious act is a question of fact for the jury." *Century Building Co.* v. *Lewkowitz,* 1 *Ga. App.* 636 (57 S. E. 1036), the court did not err in overruling the demurrer.

No good purpose would be served by discussing seriatim the numerous grounds in the motion for a new trial. All have been carefully considered, and none show cause for another trial. The issues raised are controlled by the authorities hereinbefore cited. In view of its application to the issue involved in the instant case, it suffices here to quote the charge complained of in ground 17 of the motion for a new trial, as follows: "A master who puts a servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion of protecting the master's property, goes beyond the line of his strict duty or authority, and inflicts unjustifiable injury upon another. A company must take the risk of infirmity of temper, maliciousness, and misconduct (committed in the course of the servant's employment) of the employees whom the company has placed in charge of its business." This charge is a quotation which is quoted and adopted by our Supreme Court in *Thompson* v. *Wright,* supra, except that the trial judge, in charging favorably to the contention of the defendant company, has added that the tortious act must be in "protecting the master's property," and must be "committed in the course of the servant's employment." The addenda to the proposition laid down by our Supreme Court being favorable to the defendant company, and the whole stating a correct proposition of law, there is no error in the charge.

The evidence supports the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*