### 29183. WESTERN CASUALTY & SURETY CO. v. STROZIER.

DECIDED MARCH 20, 1942.

*Arthur L. Purvis,* for plaintiff in error.   *Lewis A. Mills,* contra.

MacINTYRE, J.   Only headnotes 1, 2, and 3 will be discussed. The petition alleged that the plaintiff received injuries in a collision with a truck belonging to B. Hosti; that at the time of the collision Hosti carried a liability-insurance policy with the defendant; that the policy provided that the defendant would pay for damages to person or property, up to a named amount, caused by the negligent operation of said automobile or truck, by the insured, Hosti, or any person using the truck with the permission of Hosti; that at the time of the collision the servant of Hosti, who had control of the truck, was using the same with the permission of Hosti, and that therefore such servant was an additional insured under the terms of the policy, and the company was therefore liable to the plaintiff under the policy on which this suit is predicated.   We think this was sufficient to set out a cause of action on the policy, and the judge properly overruled the demurrers.

It appears from the evidence that Hosti was engaged in the grocery business on Tybee Island, Georgia, and used the truck for delivering groceries and taking orders, and that he gave his servants named in the petition permission to use the truck in making deliveries and obtaining orders for him on Tybee Island, but had specifically instructed them not to use the same to go to Savannah for any reason.   On the occasion in question Hosti instructed James Penniman, a servant, to take the truck to deliver certain groceries on the island and to take orders.   During the time he had possession of the truck for the purpose of delivering groceries and taking orders, Penniman drove to Savannah, beyond the limits of the island, for the purpose of obtaining a white coat.   On his way back to the island he saw one Bryan, who was also a servant of Hosti but who was having his day off, standing on the side of the road waiting for a bus.   He picked Bryan up and Bryan drove the truck.   Shortly thereafter the truck collided with the plaintiff's car and caused injuries for which the plaintiff is now suing the company.

The provision of the policy which determines whether or not the insurer is liable is as follows: "The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile [truck] and

any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial' each as defined herein, and provided further that the actual use is with the *permission* of the named insured." (Italics ours.) This exact provision of a similar policy was recently discussed in *Hodges* v. *Ocean Accident & Guarantee Cor., 66 Ga. App.* 431 (18 S. E. 2d, 28). For a general discussion of the subject of "permission" as used in such policies see that case.

The uncontradicted evidence in this case discloses that Bryan was acting as the *assistant* of Penniman, and was driving "in the presence of the driver [Penniman] and by his direction or with his acquiescence." The negligent act of the *assistant,* Bryan, under the circumstances here, was the negligent act of Penniman. 5 Blashfield's Cyc. Auto. Law and Pract. 52, § 2921. It should be noted that the rules of law used in determining the liability of an insurance company which issued the automobile liability policy to the master are not necessarily co-extensive with the ordinary rules of master and servant as would be applied if a suit was against the master for the negligent acts of the servant injuring a third person. The insurance company is liable only in consequence of its written contract of insurance. Gray *v.* Sawatzki, 291 Mich. 491 (289 N. W. 227).

As respects liability of an insurer on a liability policy covering an employer's truck where there is no *express* consent or *prohibition* to use the truck, the implied consent for the use of the truck by an employee extends only to the scope of the employment, and when the employee is outside the "scope of his employment," he is outside the employer's consent (permission); the terms "scope of employment" and "consent" being co-extensive and having the same meaning, and the "scope of employment" being merely the measuring rod by which it can be determined whether the employee was acting with the "implied consent" of the employer. Gray *v.* Sawatzki, supra. "If it was done in the course of the servant's employment and in furtherance thereof, the law will regard the act as having been impliedly authorized by the master." *Thompson* v. *Wright,* 109 *Ga.* 466, 469 (34 S. E. 560).

But here the defendant contends that, by reason of an express prohibition as to use of the truck for any purpose beyond the limits

of Tybee Island, the express order or prohibition within the range of its express terms overrides or outweighs what would otherwise have been the general implied consent to use the truck anywhere in furtherance of the employer's business. Under the facts of this case, even if Penniman had decided to make a delivery of groceries or obtain an order beyond the limits of the island, the use of the truck elsewhere being expressly prohibited, such use (in the absence of an express specific permission for the trip to Savannah) would not have been with the permission of the insured, as permission is defined in the policy. Since the use made of the truck was expressly prohibited, it was not used with the *permission* of the named insured as that word is defined in the policy, and the company is not liable. Caldwell *v.* Evans, 98 Fed. (2d) 364. The evidence demanded such a finding, and the judge erred in overruling the motion for new trial. *Hodges* v. *Ocean Accident & Guarantee Cor.,* supra.

Judgment reversed. *Broyles, C. J., and Gardner, J., concur.*