## United States Fidelity & Guaranty Co. v. Brann (two cases).

### Same v. Johnson (two cases).

Feb. 25, 1944.

382

Stephens & Steely for appellant.

J. Marshall McCann and H. C. Gillis for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

A small truck owned by H. C. Hopper and driven by Orland Gaylor collided with an automobile in which Dr. Albert Brann, his wife, T. P. Johnson and his wife, citizens of Texas, were riding and injured them in various degrees. Suits for damages were brought against Hopper and Gaylor, but were dismissed as to Hopper. Judgments for different amounts were recovered of Gaylor, but they could not be collected as he is insolvent. These suits were then brought on the judgments against United States Fidelity & Guaranty Company, which carried indemnity insurance on the truck. Verdicts were recovered upon the issue of whether Gaylor had permission to use the machine. The Company brings appeals from the several judgments rendered thereon.

The policy of indemnity stipulates, with certain inapplicable exceptions, that the word insured ''includes not only the Named Insured but also any person while using the automobile * * * provided the declared and actual use of the automobile is 'pleasure and business,' each as defined herein, and provided further the actual use is with the permission of the named insured.'' Such a provision is generally called an omnibus clause. In some states it is written into policies of this kind by virtue of a statute. It is conceded that the injured plaintiffs would be entitled to the benefits of the insurance indemnity if the evidence had established that the use of the truck by Gaylor was with Hopper's implied or inferred permission under a proper construction of the policy.

Permission within the meaning of the provision is not limited to that expressly granted but may arise and be implied from circumstances. It seems to us that where there is no express consent for an employee to use his

employer's car, an implied permission extends only to its use in the scope of the employment (slight deviations making no difference) and that its use outside that employment cannot be implied unless there had been permission to use the car generally or a course of conduct or a practice with the knowledge and acquiescence of the owner, such as would indicate to a reasonable mind that the employee had the right to assume permission under the particular circumstances. United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S. W. (2d) 550; Western Casualty & Surety Co. v. Strozier, 67 Ga. App. 41, 19 S. E. (2d) 433; Annotations, 41 A. L. R. 495; 72 A. L. R. 1375; 106 A. L. R. 1254; 126 A. L. R. 548. Included in this would be knowledge of the employee using the car for his own purpose or private affairs on different or similar occasions by acquiescence or lack of objection or of reprimand by the employer or owner. Maryland Casualty Company v. Ronan, 2 Cir., 37 F. 2d 449, 72 A. L. R. 1360; Tomasetti v. Maryland Casualty Company, 117 Conn. 505, 169 A. 54.

In the case at bar it is claimed there is more than the ordinary relationship of employer and employee because the driver was a member or guest in the owner's home. It would probably not be contended that there was no liability if the driver should come within the family purpose doctrine, which goes further and imputes the relationship of principal and agent where one maintains an automobile for the pleasure or other use of members of his family. United States Fidelity & Guaranty Co. v. Hall, supra; Randig v. O'Hara, 123 Pa. Super. 251, 187 A. 83. The purpose of an "omnibus clause" is to extend the coverage beyond such limitations. Vezolles v. Home Indemnity Co., D. C. 38 F. Supp. 455, affirmed Home Indemnity Co. v. Vezolles, 6 Cir., 128 F. 2d 257. We think substantially the same conditions must exist with respect to a boarder or guest in a household, as we have suggested should exist in the relation of employer and employee. We held in the Hall case that an adult son who lived with his mother, in whose name title to the automobile had been placed by him, under the circumstances had the implied permission of the mother to use the car although not obtaining her consent to use it upon the particular trip during which the accident occurred, especially since the policy provided that any adult member of the insured's family might grant such permission to another. But

there can be no implied permission by reason of the relationship where an employee or guest or other person occupying a similar association takes the car and uses it for the first time. Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S. W. (2d) 473, 72 A. L. R. 1368; Brochu v. Taylor, 223 Wis. 90, 269 N. W. 711. Of course, there may be an implied consent in the first instance if the peculiar circumstances justify the inference.

Whether there was a permission within any of the foregoing interpretative applications at the time and place and for the purpose the car was being used is, of course, a question of fact. But if the evidence is all one way without susceptibility of a different inference or deduction and there is no evidence bringing the case within those rules, of course, it becomes a matter of law for the court. We examine the evidence.

Orland Gaylor was an orphan and as he was growing up he worked for Hopper as a delivery boy in his grocery in Corbin. Four years before the accident he left there, spending most of his time in New Mexico, but returned to this part of the country in April, 1941. His brother worked as a delivery boy for several months and then obtained a better job. Orland, who was then about 25 years old, took up his old job with Hopper about two weeks before the accident. He had been staying part of his time in the homes of his brother and sister, but occasionally slept and took his meals in the Hopper home, which was an apartment above the grocery. Hopper and his wife thought well of the young man and welcomed him as a guest. The keys to the delivery truck were kept in the store and obtained there by Gaylor or others for use in the business during the time the store was open. It and a passenger car were kept in a garage on the premises.

On Sunday morning, September 21, 1941, at Hopper's request, Gaylor took the truck and drove about town gathering up some young men for a Sunday School class taught by Hopper. He had done so the previous Sunday. After leaving the boys at the church Gaylor put the car in the garage, which was about two squares away, locked the door and went back to the class himself. He kept the keys in his pocket. He ate noonday dinner with the Hopper family. In the early afternoon Hopper left home in his passenger car. During his absence Gaylor took the truck, drove about town a little

while with some other young men and then went westwardly three or four miles from Corbin, where the accident occurred. The car was demolished and Gaylor was seriously injured. Both Hopper and Gaylor testified he had no permission to use the car on this occasion and that Hopper did not know he had it out. Gaylor did not decide to use it until Hopper had left home, and then intended to go to call on a young lady at Grays, which is east of Corbin, but was riding around before going there. As tending to show a former use under like circumstances, the young lady and her mother testified that on the previous Sunday Gaylor had come in the truck to call on the young lady and had taken her and her sister out in it. But these witnesses only said that he was driving a new black pickup truck and that Gaylor had said he was working for Mr. Hopper, who was like a father to him, and that it was his truck. Gaylor denied all of these statements and testified that another young man had taken him on that occasion in his own passenger car. The court properly admonished the jury that this was not substantive evidence, but had been admitted for the purpose of contradicting Gaylor as to his former use of the truck. Both Gaylor and Hopper testified that he had not previously used the car for his own purpose, either with or without the owner's consent. He had never asked such permission.

Gaylor cannot be regarded as a member of Hopper's household. Cf. Indemnity Insurance Co. v. Sanders, 169 Okl. 378, 36 P. (2d) 271. The circumstances under which liability attached by reason of the negligent use of the insured automobile by a frequent and welcome guest (as was Gaylor) in Hinton v. Indemnity Insurance Co., 175 Va. 205, 8 S. E. (2d) 279, are different, for the proposed plan to use the car was discussed within the hearing of the owner, the key was taken in his presence and with such knowledge he made no objection. The case of Vezolles v. Home Indemnity Co., D. C., 38 F. Supp. 455, relied upon quite confidently by the appellees, has at least one distinguishing feature. The action of the owner of the car in going to bed and not keeping his promise to drive the borrower home at an early hour in the morning after he had used the car at the owner's suggestion was a tacit consent that he drive himself home, on which course, although in a roundabout way, the accident occurred. Other cases, it seems to us, are also distinguishable upon the facts.

Shortly after the accident a representative of both the appellant and another insurance company which carried indemnity on the car of the appellees made an investigation of the accident. The plaintiffs proved that Hopper had said to him and Dr. Brann that he was fully covered by insurance and that everything would be taken care of. Hopper admitted telling Doctor Brann that he had insurance on the car and the amount, but denied promising him that everything would be all right or be taken care of. During this inquiry the representative of the other Insurance Company asked Hopper whether Gaylor was driving his truck with his permission and he answered: "Yes, he is a good boy and I trust him. The keys are kept right there (indicating near a cash register in his store) and he just gets them." Hopper denied this and is supported in his denial by his brother. Such statements could not bind the Insurance Company or modify the terms of its contract. Their competency and effect are only as an impeachment. Indemnity Insurance Co. v. Forrest, 9 Cir., 44 F. 2d 465; Trotter v. Union Indemnity Co., 9 Cir., 35 F. 2d 104.

It cannot be said that the express permission to use a car for a given purpose, or in this instance an express request to use it in taking the boys to Sunday School in the morning, implied permission to use it in the afternoon for a joy ride or the driver's own pleasure in a different place. Frederiksen v. Employees' Liability Assurance Corp., 9 Cir., 26 F. 2d 76; Byrne v. Continental Casualty Co., 301 Ill. App. 447, 23 N. E. 2d 175; Laroche v. Farm Bureau Mutual Auto Insurance Co., 335 Pa. 478, 7 A. 2d 361.

The case for the plaintiffs rests upon the proposition that the owner of the automobile had not prohibited its personal or private use by Gaylor, and after the accident he had not reprimanded him, but had been sympathetic, looking after him in the hospital, keeping him in his home a few days after he was dismissed, and had become surety on his note for his hospital and doctor's bills.

The instructions given were offered by the plaintiffs and defined an implied promise within the meaning of the policy as "A promise which may fairly be inferred or implied from the facts and circumstances and acts and conduct of H. C. Hopper and Orland Gaylor with respect to the use of the truck mentioned in the

evidence.'' That is a good general definition, but we do not think the evidence authorized any submission of the question, for it does not measure up to any of the standards or conditions above described. There was neither a general custom or course of conduct proven and the circumstances under which the automobile was used on the afternoon of the accident afford no basis for any implication of special permission.

The appellees have maintained that irrespective of the question of permission on the part of the owner of the insured car to the driver, the appellant waived any defense it had under the policy and is estopped from denying its coverage because it conducted an investigation and defended the suits for damages against Gaylor. There is no doubt but that a representative of the insurance company made an investigation of the accident. Nor is there doubt that the company promptly gave written notice to Gaylor that it would not represent him in the defense of the cases. The law firm of Stephens and Steely had represented the United States Fidelity & Guaranty Company, insurer, in that locality for many years. In behalf of the company they represented Hopper so long as he was a defendant, which was in accordance with the policy contract, the merit or lack of merit of the cases not affecting that obligation. In this capacity they attended the taking of depositions and acted until the cases were dismissed against Hopper. Mr. L. O. Siler was the attorney for Gaylor in the trial of the suit of Dr. Brann and wife, but no one represented him in the suit of Mr. Johnson and wife, judgments in their behalf going by default against Gaylor. It is sought to attach representation by Stephens & Steely of Gaylor by reason of their participation in the cases as above stated. It is doubtful whether the doctrine of waiver or estoppel applicable to insurers under some circumstances (as with respect to negligence of the insured or his agent, or as to notice) is applicable in a case of this character where the issue of permission to use the car was really not involved on the primary trial, the petitions against Hopper being dismissed by the plaintiffs before or during the trials. See Metropolitan Casualty Insurance Co. of New York v. Albriton, 214 Ky. 16, 282 S. W. 187; United States Fidelity & Guaranty Co. v. R. B. Tyler Co., 215 Ky. 168, 284 S. W. 1038; United States Fidelity & Guaranty Co. v. Miller, 237 Ky. 43, 34 S. W. (2d) 938; 76 A. L. R. 12. But we find no ground for

believing that that firm continued in the case after the dismissal of the petitions against Hopper. This, obviously, makes it unnecessary to discuss the legal rights which rest upon waiver or estoppel through defending claims or suits in such cases, a matter upon which the courts have differed. Annotations, 72 A. L. R. 1419. The court properly declined to submit this issue to the jury.

Wherefore each of the judgments is reversed.