**W. A. FREDERICK, d/b/a West Hi Market, Appellant,**

v.

**Lillian M. COLLINS, Adm'x of the Estate of Charles E. Collins, Appellee.**

Court of Appeals of Kentucky.

April 24, 1964.

Denney & Landrum, Lexington, for appellant.

Weldon Shouse, Lexington, for appellee.

DAVIS, Commissioner.

On April 27, 1961, Robert Frederick shot and killed Charles E. Collins in the grocery store owned by appellant, W. A. Frederick, in Lexington. Appellee, administratrix of Charles E. Collins, obtained judgment of $5,000 in Fayette Circuit Court in this wrongful death action; the judgment was rendered pursuant to the jury's verdict imposing liability on both Robert Frederick and his employer, appellant W. A. Frederick. This appeal is by W. A. Frederick alone, and presents the sole question whether the act of shooting was within the scope of the employment of Robert Frederick, who was the son and employee of the appellant.

Appellant owned and operated a neighborhood grocery at the intersection of Spring and High Streets, known as West Hi Market. In addition to groceries, meats, and vegetables, package beer was sold from the store. It appears that the business was conducted by appellant with the aid of other members of his family, including his son Robert Frederick. At the rear of the store was an area in which was located a TV repair shop that was independently conducted by Robert Frederick. However, it is un-

disputed that at the time of the unfortunate killing of Charles E. Collins, Robert Frederick was in sole charge of the operation of appellant's store. It is also undisputed that Robert worked in the store part-time, on a commission basis, and that he had done so for about five years prior to the incident involved here.

Robert Frederick was the only eyewitness to the shooting. His explanation was that Collins entered the store about 7:00 p. m. and said, "Stick 'em up; this is a hold up." Robert related that he had not seen Collins enter, nor did he hear him; that Collins, whom he admitted knowing by sight as a regular customer of the store and resident of the immediate neighborhood, had "changed" his voice. Robert explained that he was so frightened that he turned around and hit Collins in the face with the pistol and then shot him, without ever realizing that it was Collins. Robert accounted for his having such ready access to the pistol by testifying that he had been repairing the weapon—that he had had it at the meat block, when he decided to check the cash register in order to have a starting figure from which his commissions on sales could be computed. So, he walked from the meat block, carrying the pistol; before he could lay the pistol down to check the register, he heard Collins speak the quoted words.

Appellant testified that he had not known that Robert had the pistol; that he had frequently instructed all of his employees, including Robert, never to resist a hold up, because he had ample insurance to guard against any loss. In this he was corroborated by Robert.

The trial court submitted the case to the jury under instructions authorizing recovery against both the appellant and Robert Frederick, unless the jury should believe that Robert Frederick acted in self-defense, real or reasonably appearing so to Robert. The court also submitted as a basis for liability the theory of the negligence of Robert Frederick. The trial court did not submit to the jury any issue as to whether Robert Frederick's actions were within the scope of his employment. It is the failure of the trial court to include that theory, plus the claim that the trial court should have directed a verdict for appellant, upon which we are asked to reverse the trial court.

The question of liability of the master for the assaults committed by his servant has been before this and other courts frequently. Some of our cases in which it has been held that the master was not liable are: Creamer v. Kroger Grocery & Baking Co., 260 Ky. 544, 86 S.W.2d 288; Phillip's Adm'r v. Tway, 269 Ky. 583, 108 S.W.2d 525; McBee's Adm'x v. Indian Head Mining Co., 280 Ky. 82, 132 S.W.2d 515; Cincinnati, N. O. & T. P. Ry. Co. v. Rue, 142 Ky. 694, 134 S.W. 1144, 34 L.R.A.,N.S., 200; John v. Lococo, 256 Ky. 607, 76 S.W. 2d 897; Moore v. Ford Motor Co., 265 Ky. 575, 97 S.W.2d 400; Wood v. Southeastern Greyhound Lines, 302 Ky. 110, 194 S.W.2d 81; Citizens Finance Co. v. Walton, Ky., 239 S.W.2d 77.

In other cases from this jurisdiction the master has been held to be liable: J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W. 2d 359; Fournier v. Churchill Downs-Latonia, Inc., 292 Ky. 215, 166 S.W.2d 38; Dennert v. Dee, 308 Ky. 687, 215 S.W.2d 575; Louisville & N. R. Co. v. Moore's Adm'r, 292 Ky. 223, 166 S.W.2d 68.

Neither list of citations is intended to be complete; examination of the cases cited discloses that although opposite results were reached, because of widely variant factual situations, they recognize principles of law which are substantially consistent.

In 34 A.L.R.2d 372, et seq. is found a recent annotation dealing with the law relating to "Assault by Servant." In discussing the applicable legal principles relating to mercantile establishments, it is said at page 427 of 34 A.L.R.2d:

"The rule discussed in the previous two sections to the effect that certain employees, from the nature of their du-

tics, may cause their employers to become responsible, under the doctrine of respondeat superior, for assaults committed by them upon a customer, patron, or other invitee has been applied in certain situations to employees of mercantile establishments. The question of the master's responsibility in such cases appears to be determined by the type of work which such employees are expected to perform, and hence employees such as store detectives, and managers and other agents who exercise control over the conduct of the master's business, and who are expected to safeguard the master's property and maintain order are ordinarily held to be acting within the scope of their employment when committing an assault upon a customer, patron, or other invitee even though such assaults are to some extent personal and malicious."

■ In Prosser on Torts, 2nd Ed., pp. 354, et seq. it is observed that early cases denied recovery against the master, adhering to the fiction of an "implied command" of the master against intentional wrongdoing by his servant. However, under modern theories of allocation of the risk of the servant's misbehavior, it has been recognized, says Prosser, that even intentional torts may be so reasonably connected with the employment as to fall within the scope of it. The present tendency is to extend the employer's responsibility for such conduct. Op. cit., p. 354.

The principle is thus stated in Restatement of Agency, 2d, § 245:

"A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant."

It is noteworthy that the Reporter's Notes, Restatement of Agency, 2d, § 245, recognize the present rule of liability reflects a broader basis for liability than did the rule in the first edition. It is said in the Reporter's Notes:

"It is believed that it is now desirable to state a rule invoking a somewhat greater liability because of the cases in the intervening years." Page 389, op. cit.

■ In the case at bar Robert was admittedly the appellant's employee; moreover, he was in sole charge of the store at the time of the incident. Without doubt Robert Frederick was under obligation generally to manage and protect the appellant's store and its contents. There is no evidence that Robert sought to serve any personal purpose in his activity toward Collins. In fact, Robert asserted that he did not know whom he was shooting—that he acted in self-defense. He actually testified that he would have shot his father or brother under the same circumstances. So it is obvious that this case is not governed by any of the authorities which deny liability because the employee has acted in furtherance of a personal motive as distinguished from a motive connected with the employer's business.

In our view the reasoning of the Georgia court in Great Atlantic & Pacific Tea Co. v. Dowling, 43 Ga.App. 549, 159 S.E. 609, is sound. There the manager of the A & P store said he saw a small negro girl slip a piece of candy into her pocket, whereupon he retained part of the change due her from a purchase she had made. The manager slapped the child twice, then tied her hands over her head and held her thus captive until her release was purchased for $5.00 by her foster mother. Other indignities were shown to have been committed by the manager against the child. There, as here, the employer defended on the ground that it had given specific instructions to the manager against such activity. That defense was rejected in the Georgia case, and

we reject it here. The following language of the Georgia court aptly states our view of this situation:

"The true question is, Was the manager of the defendant company, at the time he committed the tort, acting in an individual capacity or as manager of the defendant company's store? The tort was committed in the store of the defendant company, by the manager of the company, in dealing with a customer of the company, to avenge a wrong done the company, because of candy stolen from the company, and to prevent further stealing from the company. There is not the slightest intimation that the manager had been wronged personally or that he had any personal grievance against the child. He was manager of the store, and this was the method he adopted of protecting the store's interest, avenging the wrong, and preventing a recurrence of the alleged theft from the store. The selection of a manager who would pursue such an improper course in a matter concerning the company's business was made by the defendant company. The manager was at the time engaged in serving his master, the defendant company. His tortious act was in the prosecution of the master's business. It was not in the prosecution of his individual business." Op. Cit., 159 S.E. p. 611.

Since the employment was admitted, it follows as a matter of law that Robert Frederick, while acting as manager of the store, was acting within the scope of his employment in protecting the premises. Thus, the trial court correctly assumed the actions of Robert to have been within the scope of his employment. If but one conclusion regarding facts reasonably may be drawn from the evidence, such factual conclusion may be assumed in instructing the jury. Louisville & N. R. Co. v. Foster, 230 Ky. 157, 18 S.W.2d 983; 53 Am.Jur., Trial, § 158. See Fields v. Sanders, 29 Cal.2d 834, 180 P.2d 684, 172 A.L.R. 525, wherein the

California Supreme Court upheld the trial court's ruling that the employee's activities were within the scope of his employment, as a matter of law and not of fact, when the facts were not in dispute.

The judgment is affirmed.

STEWART, J., dissenting.