James W. **TURNER**, Sr., Administrator of the Estate of Sarah Burnice Miller, Plaintiff-Appellant,

v.

**GREAT AMERICAN INSURANCE COMPANY**, Defendant-Appellee.

No. 19499.

United States Court of Appeals, Sixth Circuit.

April 20, 1970.

William E. Baker, Louisville, Ky., for appellant.

William S. Bowman, Louisville, Ky., Stiles & Miller, Louisville, Ky., on the brief, for appellee.

Before EDWARDS, PECK and Mc-CREE, Circuit Judges.

PECK, Circuit Judge.

Plaintiff-appellant recovered a judgment entered on a jury verdict against an insured of the defendant-appellee in a court of the Commonwealth of Kentucky. He thereafter brought the present action to recover the amount of that judgment against the appellee as such indemnitor in a Kentucky court, from which it was removed to the District Court. There, pursuant to motion, summary judgment was entered for the defendant, and it is that judgment which we here review.

The action arose out of an accident allegedly resulting from the negligent operation of the driver of a truck owned by appellee's insured, the Yarbrough Supply Company, Inc. The judgment allowed compensatory damages for personal injuries, property damage and expenses suffered and incurred by the original plaintiff, the administrator of whose estate has since been substituted.

At the time of the collision the Yarbrough Supply Company truck was being driven by its employee, one Marion P. Poole. The depositions of Poole and the president of Yarbrough Supply establish that sometime between 9:30 and 9:45 on the night in question, having quit work at around 5 p. m., Poole returned and took a company truck so that he could transport a refrigerator to the home of a relative. After picking up the refrigerator at his mother's home he delivered it and started back. En route he remembered that he had left a company hand truck with the refrigerator and was on his way back to pick it up when the accident occurred.

The depositions further establish that Poole regularly drove the subject truck daily in his work, and that on frequent occasion he kept the truck key in his possession overnight when he was to take it out before the office opened the next morning. On some three prior occasions Poole had obtained permission from O'Dell, the company president, to use the truck for personal purposes, and on the night in question he had the keys in his possession because of a trip scheduled for early the following morning. It developed during the evening that a relative wanted the refrigerator moved, whereupon Poole went to the Yarbrough parking lot, got the truck and made the trip described above.

In the order of the District Court's sustaining the motion for summary judgment for the defendant, no grounds for that action is stated. Two grounds for its affirmance, however, are urged by the appellee. It first contends that under the law of Kentucky even the president of a corporation has no authority to permit or instruct an employee to use an insured corporate vehicle on a personal errand. The stated authority for this proposition is Koch's Adm'r v. Koch Brothers, Inc., 274 Ky. 640, 119 S.

W.2d 1116 (1938). That decision, however, does not support the stated proposition. The corporation there involved was wholly owned by two brothers and their wives. One of the brothers sent an employee driven truck on an errand which included picking up two turkeys for delivery to their two homes, and told his two daughters (five and ten years of age) that they and their young cousin, son of the other brother, could ride along. The younger daughter was killed, and her administrator brought action based on the alleged negligence of the truck driver.[1]

In "[t]his strange situation," strongly suggestive of fraud, the court in *Koch* held that as a corporate official the father was without authority to authorize the presence of the child in the truck, and that subsequent ratification of such presence by the stockholders was ineffective because the rights of a third party (an insurance company) had intervened. There is no reference to the terms of the insurance policy and the question of whether permission could have been given thereunder to take a passenger into the vehicle is not considered. The court relied on the "well-established principle that the master is not liable for the acts of his servant which are not done in furtherance of the master's business and within the apparent scope of the servant's authority." (274 Ky. 642, 119 S.W.2d 1117).

The present case is not an agency case, but is rather one involving the construction of a contract. At issue is the interpretation to be placed on the policy of insurance issued by the appellee to Yarbrough Supply. That policy provided coverage when the vehicle insured was operated by the named insured and also when used by another, "provided the actual use of the automobile is by the Named Insured or with [its] permission. * * *" On the occasions of Poole's prior uses of the vehicle, as well as at the time of the subject accident,

O'Dell was the branch manager of Yarbrough Supply (he later succeeded to the presidency), and as demonstrated *Koch* does not foreclose the conclusion that O'Dell could have within the meaning of the language of the policy granted Poole "permission" to use the vehicle. However, it is conceded that no specific permission was granted by O'Dell or anyone else for Poole's use of the truck on the night in question, and there therefore remains only the question of whether there was implied permission for such use.

■ This brings us to appellee's second contention, under which is marshaled an impressive array of facts to refute the inference that Poole had implied permission to take the truck on the night in question. Appellee urges that O'Dell was without authority to grant permission for the three prior uses of the truck by Poole for personal errands, but a resolution of that mixed question of law and fact is not possible on the basis of the present record.[2] Appellee then contends, assuming arguendo that O'Dell had had the requisite authority on the earlier occasions, that those uses afforded no basis for the inference of use under implied consent on the fourth occasion. However it seems apparent in the nature of things that when permission to do and act is always granted (there is no evidence that a request by Poole to use the truck had ever been denied), an implied consent to repeat the act ultimately emerges. The number of such acquiescences by the granting authority required to support an inference of implied consent might vary within wide ranges, dependent upon the evidence as the nature of the act, its potential benefits to the employee and corresponding disadvantages to the employer, the relationships of the parties to one another and to the corporation, and all other surrounding circumstances.

■ There is before us, and there was before the District Judge, a record

---

1. The boy's guardian also brought an action against the corporation to recover for his injuries.

2. Among other deficiencies, the record is devoid of evidence on the question of ratification, if any, as to the prior uses.

upon which a finding of fact on the question of implied consent might have been made had the parties submitted the case on that record. However, the case has of course not come before either the District Court or ourselves in that manner. Rather, it was submitted under Rule 56 of the Federal Rules of Civil Procedure and the judgment in favor of the defendant can only be sustained if the record discloses the existence of no genuine issue of any material fact. Our conclusion is to the contrary, it being specifically here determined that an issue for submission to the trier of fact upon trial is demonstrated by the record before us.

We find nothing in the decision of the Kentucky Court of Appeals in United States Fidelity and Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102 (1944) that is inconsistent with our conclusion.

The judgment heretofore entered for the defendant is vacated, and the cause remanded for further proceedings consistent herewith.